IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 12-cv-0189-WJM-KMT

TEASHOT LLC, a Colorado limited liability company

      Plaintiff,

v.

GREEN MOUNTAIN COFFEE ROASTERS, Inc., a Delaware corporation,
KEURIG, Incorporated, a Delaware corporation, and
STARBUCKS CORPORATION, a Washington corporation

      Defendants.

---

## ORDER ON CLAIM CONSTRUCTION

---

Plaintiff Teashot LLC ("Plaintiff" or "Teashot") owns the rights to United States

Patent No. 5,895,672 (the "'672" Patent).  In this action, Teashot alleges that

Defendants Green Mountain Coffee Roasters, Keurig, and Starbucks Corporation

(collectively, "Defendants"[1]) have infringed on the '672 Patent.  (ECF No. 1 ¶¶ 49-53.)

This matter is currently before the Court for construction of the disputed terms in the

'672 Patent.

## I.  LEGAL STANDARD

The fundamental purpose of a patent is to give notice to others of that in which

the inventor claims exclusive rights.  *Oakley Inc. v. Sunglass Hut International*, 316 F.3d

1331, 1340 (Fed. Cir. 2003).  Thus, the focus of claim construction is ascertaining how

---

[1]  Defendants have acted collectively with respect to all issues relevant to claim
construction.  Thus, the Court will differentiate between the Defendant parties only when
necessary.

a reasonable competitor would interpret the actual claim language, not what the inventor subjectively intended the language to claim. *Id.* at 1340-41. The words used in the patent are evaluated by employing their "ordinary and customary meaning," as would be understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).

In attempting to give meaning to the inventor's language, the Court "looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips,* 415 F.3d at 1314. Among those sources are: (i) the words of the claims themselves; (ii) the remainder of the patent's specification; (iii) the prosecution history of the patent; (iv) extrinsic evidence concerning relevant scientific principles; (v) the common meanings of technical terms used; and (vi) the state of the art at the time of the invention. *Id.* Terms must be construed in light of the entirety of the patent, not just in the context of the particular claim(s) in which they appear. *Id.* at 1313. In other words, claim language must be read in conjunction with the more general and descriptive specification portion of the patent; indeed, the specification is often "the single best guide to the meaning of a disputed term." *Id.* at 1315. Because the patent is examined as a whole, the Court assumes that claim terms will normally be used consistently throughout the patent, and thus, the meaning of a term used in one claim can illustrate the meaning of that same term used elsewhere in the patent. *Id.* at 1314.

## II.  FACTUAL BACKGROUND OF THIS CASE

In the 1980s and 90s, specialized forms of coffee, such as espresso, grew in popularity.  (ECF No. 48 at 6.)  Espresso is produced in special machines that operate at a higher temperature and pressure than a standard coffee maker.  (*Id*.)  For single serving espresso beverages, coffee was typically placed into "pods" which consisted of "an enclosed water-permeable pod or package which contains a pre-measured amount of ground coffee that is preferably compressed to provide a consistent measure of coffee for production of espresso beverages."  ('672 Patent at 1.)

Barry Patrick Wesley Cooper is an "International Tea Master with decades of experience in tea."  (ECF No. 50 at 6.)  In early 1997, he began to develop a "novel invention" whereby one could use an espresso machine to make a cup of tea in a fraction of the time required to make tea using conventional methods.  (*Id*.)  Mr. Cooper filed a patent application for this invention on January 13, 1998 and, on April 20, 1999, was granted U.S. Patent No. 5,895,672 entitled "Product and Process for Preparing a Tea Extract".  (*Id*.)  In 2011, Cooper formed Teashot LLC and assigned the '672 Patent to the LLC.  (*Id*. at 7.)

 The '672 Patent seeks to allow the brewing of tea in a coffee brewing device and, particularly, an espresso machine.  ('672 Patent at 1.)  The '672 Patent states that the "prior art" of the existing coffee pod technology cannot be used to brew a good cup of tea; rather, using existing coffee pod technology results in tea that is weak and tasteless.  (*Id*. at 2.)  The purpose of the invention covered by the '672 Patent is to use existing coffee-espresso technology to produce high quality tea-based beverages that

are "consistent, fast, easy, [and] cost efficient". (*Id.*)  The '672 Patent's Claims[2] cover (1) the tea extraction container (Claims 1-19); (2) the tea composition (Claim 20); and (3) the method for producing a tea extract using a coffee brewing device (Claims 21-26).

Plaintiff filed this action against Defendants Green Mountain Coffee Roasters, Inc., Keurig, Inc., and Starbucks Corporation alleging that Defendants are violating the '672 Patent by manufacturing, selling, or offering "K-Cup" portion packs which contain tea for use in Keurig-brand coffee brewing devices and the like.  (ECF No. 1 at 15-21.) In accordance with the Court's Scheduling Order, Plaintiff provided Defendants with its preliminary infringement contentions on May 1, 2012.  (ECF No. 51-2.)  Therein, Plaintiff alleged that Defendants were infringing on the following Claims: 1-4, 6-8, 12, 14, 20-23.  (*Id.* at 1.)  Of these Claims, Claims 1, 20, and 21 are independent; the remaining Claims depend, either directly or indirectly, on these independent Claims.

On June 22, 2012, the parties filed their Joint Statement of Stipulated and Disputed Claim Terms and Phrases for Construction and Proposed Constructions. (ECF No. 44.)  The parties stipulated to the construction of the following four terms and/or phrases:

---

[2]  Capitalization of the terms "Claim" or "Specification" means the Court is referring to those portions of the '672 Patent.

| No. | Claim Term/Phrase | Relevant Asserted Claims | Stipulated Construction |
|---|---|---|---|
| 1 | "tea composition" | 1, 7-8, 12, 20-21 | "a composition that minimally includes at least one type of tea leaf or herbal preparation, and can further include blends of tea leaves, blends of herbs, spices and/or sweeteners" |
| 2 | "tea" | 1, 3, 4, 20, 21 | "traditional tea leaves, herbs, and blends of tea leaves and/or herbs, all of which can be used to produce a tea extract" |
| 3 | "herbs" | 2, 6 | "herbs that can be used to produce an herbal tea" |
| 4 | "a sealed body having at least one compartment, said internal compartment containing said tea leaves" | 1, 21 | "at least a portion of a tea extraction container that forms an internal compartment, or space, which completely contains the tea composition and prevents the tea composition from escaping from the internal compartment" |

Additionally, the parties identified eight terms or phrases that they disputed and that should be construed by the Court.  (ECF No. 44-2.)  On July 20, 2012, the parties filed briefs arguing in favor of their respective proposed constructions.  (ECF Nos. 48 & 50.)  On August 21, 2012, the parties filed response briefs on the construction of these eight terms and/or phrases.  (ECF Nos. 56 & 57.)  The Court held a half-day *Markman* hearing on September 28, 2012.  (ECF No. 63.)

### III.  ANALYSIS

The disputed terms have been grouped by the parties into four categories, each of which will be discussed in turn below.

### A.    "Sealed body is constructed of a water-permeable material" (Claims 1, 21)

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| "said sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition" | No construction required; but if construed: "*the* sealed body is constructed of a water permeable material which allows *fluid to flow* through *the* sealed body to produce a tea extract from *the* tea composition" | "***the portions of the sealed body into which fluid flows and out of which fluid flows*** are water-permeable material allowing flow of a fluid through said sealed body to produce a tea extract from said tea composition" |

With respect to this phrase, the parties' dispute centers on which portions of the sealed body must be constructed of water-permeable material.  Defendants argue that, as written and as Plaintiff proposes these terms be constructed, the '672 Patent would cover a sealed body where any portion of the body was made of water permeable material.  Defendants contend that this definition is too broad and that the Patent should cover only pods in which the portion of the sealed body into which fluid flows and out of which fluid flows are water permeable.  (ECF No. 48 at 14-17.)  Plaintiff contends that Defendants' proposed construction impermissibly narrows the scope of the '672 Patent.  (ECF No. 50 at 14-15.)

The parties' disagreement here stems from a fundamentally difficult aspect of patent law—the fact that the language of a claim must be considered and construed in light of the specification, yet the Court cannot read limitations into the claim language based on the specification.  In *Libel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904-05 (Fed. Cir. 2004), the Federal Circuit described this conundrum:

We have had many occasions to cite one or both of the twin

axioms regarding the role of the specification in claim construction: On the one hand, claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). On the other hand, it is improper to read a limitation from the specification into the claims. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1327 (Fed. Cir. 2003); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001). Although parties frequently cite one or the other of these axioms to us as if the axiom were sufficient, standing alone, to resolve the claim construction issues we are called upon to decide, the axioms themselves seldom provide an answer, but instead merely frame the question to be resolved. We have recognized that "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998); *accord Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1307 (Fed. Cir. 2003). As we have explained, "an inherent tension exists as to whether a statement is a clear lexicographic definition or a description of a preferred embodiment. The problem is to interpret claims 'in view of the specification' without unnecessarily importing limitations from the specification into the claims." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003); *accord Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204-05 (Fed. Cir. 2002).

Defendants' position is that, to interpret the Claim language in light of the Specification, the Court must find that the surfaces into and out of which fluid flows are water-permeable. Plaintiff contends that such a reading would impose a limitation that does not appear in the plain language of the Claim.

Having reviewed the Claim language and the Specification, for the reasons that follow, the Court adopts Defendants' proposed construction. First, the Court finds that the plain language of the Claim supports Defendants' proposed construction. The key

phrase in the Claim is "through said sealed body"—with particular emphasis on the term "through". Plaintiff acknowledges, as Defendants propose, that "through" can mean "into and out of". (ECF No. 48 at 14-15.) However, Plaintiff contends that "through" can also mean "by way of" or "from end to end or from side to side". (ECF No. 57 at 16.) Based on the latter two definitions of "through", Plaintiff contends that water can flow "through" the sealed body—regardless of how it enters the sealed body—so long as it flows out of the sealed body by way of a water permeable material.

The problem with Plaintiff's construction is that the Claim language requires the fluid to flow *through* a *sealed* body. If the Claim said only that fluid had to flow through a water permeable material, then it could encompass a device in which the fluid merely exited by way of water permeable material (the top could be open or made of some other material). Or if the Claim said that fluid had to flow through the tea composition (rather than through the sealed body), then the portions of the sealed body that were constructed of a water permeable material would not matter. However, because the Claim requires that the *water permeable material* allow flow of a fluid *through* the *sealed body*, the portions of the sealed body into which the fluid flows and out of which the fluid flows must be made of water permeable material. Thus, the plain language of the Claim supports Defendants' proposed construction.

The Court also concludes that the Specification supports Defendants' construction. The Specification states, in pertinent part:

> "According to the present invention, a tea extraction
> container can be any container which includes a sealed
> body having at least one internal compartment for containing
> a tea composition. The sealed body is constructed from a
> water permeable material which allows a liquid (e.g., water)

> to flow through the sealed body into the internal
> compartment such that the liquid contacts the tea
> composition, thereby extracting the tea composition in to the
> fluid, and then exists the sealed body as a tea extract.

('672 Patent, p. 5 lns. 39-55).   A few aspects of this portion of the Specification are significant.   First, the opening phrase "[a]ccording to the present invention" shows an intent to limit the Claim to the details of the invention that follow this phrase.   *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (where patentee referred to a fuel filter as the "present invention" the public was entitled to take him at his word that the fuel filter was the invention); *see also Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368-69 (Fed. Cir. 2003) (placing emphasis on the patentee's reference to "the invention" as limiting the claim according to the specification); *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) (portion of specification describing "the present invention", together with other factors, found limiting); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed. Cir. 2000) (finding the limitation based upon use of language "the present invention", adding that "[o]ne purpose of examining the specification is to determine if the patentee has limited the scope of the claims").

The Specification then states that in the "present invention", the "sealed body is constructed from a water permeable material which allows a liquid (*e.g.*, water) to flow through the sealed body *into* the internal compartment". ('672 Patent p. 5 lns. 42-44.) This shows that the Patentee intended the invention to cover only those devices in which water permeable material allows fluid to flow through the sealed body into the internal compartment.   This portion of the Specification makes clear that the '672

Patent does not cover devices in which fluid enters into the internal compartment in any manner other than by way of water permeable material.

Additionally, while the Specification contains examples of devices in which portions of the sealed body are not water permeable, such portions are not the areas into which the fluid flows or out of which the fluid flows.  For example, Figure 4 shows a "rigid container having multiple tea extraction containers connected to each other at the side of the sealed bodies, from top to bottom, around an axial member".  ('672 Patent col. 8 lns. 1-3.)  However, the tops and bottoms of each of these rigid metal "pods" is perforated and, therefore, water permeable.  (*Id*. col. 3 lns. 61-63.)  In this example, the only portion of the sealed body that is not water permeable are the sides.  No fluid is required to enter or exit the "pod" through the sides.

All of the drawings in the '672 Patent are examples of devices in which with the portions of the sealed body into which fluid flows and out of which fluid flows are made of a water permeable material.  This fact, combined with the explicit language in the Specification which requires that the portion of the sealed body that allows fluid to flow into the internal compartment be made of water permeable material, leads the Court to conclude that nothing in the Claim language or the Specification would put a person reasonably skilled in the art on notice that the '672 Patent covers devices in which the portions of the sealed body into which fluid flows or out of which fluid flows are made of water impermeable material.  For this additional reason, the Court concludes that Defendants' proposed construction is proper.  *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) ("[I]n the absence of something in the written description and/or prosecution history to provide explicit or implicit notice to the public—*i.e.*, those

of ordinary skill in the art—that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record, it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source.").

Accordingly, the Court concludes that the proper construction of the phrase "said sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition" in Claims 1 and 21 is "the portions of the sealed body into which fluid flows and out of which fluid flows are water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition".

**B.    "a tea extraction container" (Claims 1, 21)**

| Claim Term | Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| "a tea extraction container" | 1, 21 | No construction required; but if construed, then: "A container having any shape or configuration suitable for use in a coffee brewing device" | "a container open to through flow to access a sealed body" |

The parties dispute whether the Court should construe the phrase "a tea extraction container" for purposes of Claims 1 & 21.  Plaintiff contends that no construction is necessary because "[t]he claims themselves describe tea extraction containers with sufficient detail to render any further construction of that term superfluous." (ECF No. 50 at 20.)  Defendants contend that construction is necessary because "[t]he claims do not otherwise describe the features or structure of the

container".  (ECF No. 48 at 24.)

Defendants propose that the Court construe the term "a tea extraction container" to mean "a container open to through flow to access a sealed body".  The Court finds that adopting Defendants' proposed construction would read into the Claim a limitation that does not exist in the language of the Claim and is not fully supported by the Specification.  Because the Claim does not include any reference to an "open" container, for the Court to adopt Defendants' construction, the Specification would have to be clear that the invention was only intended to cover open containers.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).  However, the Specification describes "a tea extraction container" in broad terms; it does not limit the invention to containers that are open.  On this issue, the '672 Patent provides:

- "According to the present invention, a tea extraction container can be any container which includes a sealed body having at least one internal compartment for containing a tea composition."  ('672 Patent p. 5 lns. 39-42.)

- "The tea extraction container can be any shape or configuration suitable for sue in a coffee brewing device.  For example, a tea extraction container useful in the present invention can be in the shape of a circular pod, a square pod, or a basket."  (*Id*. lns. 56-60.)

The breadth of this language shows that an individual reasonably skilled in the art would not interpret the Specification as limiting the Claim only to "open" containers.

Defendants also contend that the incorporation of prior patents U.S. Pat. No. 5,637,335 and U.S. Pat. No. 4,254,694 show that the tea extraction container must be an "open" container.  The '335 Patent is for a "Capsule Package Containing Roast and

Ground Coffee" and describes its device as an "'open' form with permeable upper and lower faces to allow the extraction fluid to pass through."  (ECF No. 49-13 at 6.)  The term "open" appears repeatedly in the specification as a description of the device.  (*Id*.) Although this is a reference to an "open" container in the '672 Patent, the specification states that this is an "example" of a suitable container.  ('672 Patent p. 5 ln. 61.)  As the Federal Circuit has stated: "a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."  *SuperGuide Corp. v. DirecTV Enter., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).   Nothing in the Claim language or the Specification of the '672 Patent limits its scope to "open" containers such as those in the '335 Patent.

Finally, the Court disagrees with Defendants' contention that the language in the Claim does not adequately describe what constitutes a "tea extraction container". Claim 1 requires that a "tea extraction container" contain "a tea composition" and is "compris[ed of] a sealed body having at least one internal compartment, said internal compartment containing said tea composition; where in said sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition."  ('672 Patent p. 18 lns. 20-28.)  This is a relatively detailed description that the Court believes requires no additional construction (aside from construing the phrase regarding the material of the sealed body discussed in subsection A above).

Accordingly, the Court concludes that "a tea container" in Claims 1 and 21 is properly construed to mean "a tea container" based on the plain and ordinary meaning of the words.

C.     "light/medium/dark strength tea" (Claims 2-4, 7-8)

| Claim Term | Claims | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| "light strength tea" | 2 | "light strength tea extract" | No construction possible in light of remaining claim language. |
| "medium strength tea" | 2, 4, 8 | "medium strength tea extract" | No construction possible in light of remaining claim language. |
| "dark strength tea" | 2, 3, 7 | "dark strength tea extract" | No construction possible in light of remaining claim language. |

Plaintiff contends that the Court should read the word "extract" into Claims 2, 3, 4, 7, and 8.  Plaintiff argues that a person of ordinary skill in the art would understand, simply by reading the plain language of these Claims, that "tea leaves producing a dark strength tea" refers to a "tea extract".  (ECF No. 50 at 23.)

Defendants do not take issue with Plaintiff's interpretation as it applies to Claims 2 and 3.  (ECF No. 48 at 27.)  However, with respect to Claims 4, 7, and 8, Defendants contend that Plaintiff's proposed constructions (and the Claims as written) are indefinite.  That is, Defendants contend that the Claims cannot be interpreted because the language of the Claims requires that the "tea leaves" both produce a tea and be a tea extract at the same time (for Claim 4) or that they both be a tea extract and have a particular range of particle sizes (for Claims 7 & 8).  (ECF No. 48 at 27.)  Defendants do not ask the Court to make a ruling on indefiniteness at this stage; they view the issue as appropriate for summary judgment.  Rather, they contend that the Court should decline to construe these three terms now and resolve the indefiniteness issue, if necessary, on summary judgment.

The Court finds that it cannot defer construction of these terms as they are part

14

of the phrases set forth in subsection D below and both parties agree the Court should

construe those phrases.  Moreover, the Court cannot put off consideration of

indefiniteness until summary judgment because it has an obligation to avoid construing

a claim in a manner that would render a claim indefinite.  *See Honeywell Intern., Inc. V.

U.S.*, 609 F.3d 1292, 1301-02 (Fed. Cir. 2010).

The Court agrees with Plaintiff's argument regarding the need to insert "extract"

after "light/medium/dark strength tea" respectively in Claims 2-4 and 7-8.  This

construction is supported by the Specification and, when the Claims are read as a

whole, makes the Claims more clear than if the term is omitted.  Defendants do not

seriously contend otherwise.

Accordingly, the Court construes the phrase "light strength tea" in Claim 2 to be

"light strength tea extract".  The Court construes the phrase "medium strength tea" in

Claims 2, 4, and 8 to be "medium strength tea extract".  Finally, the Court construes the

phrase "dark strength tea" in Claims 2, 3, and 7 to be "dark strength tea extract".

**D.**     **"A tea composition [ ] comprising from about 2 grams to about 10 grams..."**

| Claim Term/Phrase | Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| "a tea composition [] comprising from about 2 grams to about 10 grams of tea having a particle size from about 0.40 mm to about 0.75 mm" | 1, 20-21 | "a tea composition **including at least** from about 2 grams to about 10 grams of tea **that have** a particle size of from about 0.40 mm to about 0.75 mm" | "said tea composition comprising from about 2 grams to about 10 grams of tea, **in which substantially all of the tea in the sealed body has** a particle size of from about 0.40 mm to about 0.75 mm" |

| | | | |
|---|---|---|---|
| "said tea composition comprises from about 2 grams to about 10 grams of said tea leaves producing a dark strength tea having a particle size of from about 0.40 mm to about 0.75mm" | 7 | "said tea composition **including at least** from about 2 grams to about 10 grams of tea leaves producing a dark strength tea **that have** a particle size of from about 0.40 mm to about 0.75 mm" | "said tea composition compri**sing** from about 2 grams to about 10 grams of tea leaves producing a dark strength tea, **in which substantially all of the tea in the sealed body has** a particle size of from about 0.40 mm to about 0.75 mm" |
| "said tea composition comprises from about 2 grams to about 10 grams of said tea leaves producing a medium strength tea having a particle size of from about 0.40 mm to about 0.60 mm" | 8 | "said tea composition **including at least** from about 2 grams to about 10 grams of tea leaves producing a medium strength tea **that have** a particle size of from about 0.40 mm to about 0.60 mm" | "said tea composition compri**sing** from about 2 grams to about 10 grams of tea leaves producing a medium strength tea**, in which substantially all of the tea in the sealed body has** a particle size of from about 0.40 mm to about 0.60 mm" |

With respect to these terms, the parties dispute goes to the meaning of the terms "comprising" and "having" as well as to whether the clause "having a particle size . . ." modifies "tea composition" or "2 grams to 10 grams of said tea leaves . . .". The Court will address each of these issues in turn below.

　　1.　　Comprising

"In the patent claim context the term 'comprising' is well understood to mean 'including but not limited to.'" *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). "Comprising" is an "open-ended" transition; patent claims "use the signal 'comprising,' which is generally understood to signify that the claims do not exclude the presence in the accused device or method of factors in addition to those explicitly recited." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed.

Cir. 1999).  Moreover, this usage of "comprising" also embraces "comprises" and "which comprises."  *CIAS*, 504 F.3d at 1361.

Because "comprises" is a term of art in the patent realm, the Court should construe it for the jury.  *See SKW Americas v. Euclid Chemical Co.*, 231 F. Supp. 2d 626, 637 (N.D. Ohio 2002) (construing "comprising" so that "the jury will comprehend accurately this term of art").  As set forth below, the Court will construe "comprises" to mean "including at least" in its final construction for these Claims.

2.      "Having"

The parties also dispute whether the term "having" is a closed-ended or open-ended term.  Defendants contend that "having" is a closed terms that <u>requires</u> a feature, rather than making it optional.  (ECF No. 48 at 20.)  Plaintiff disputes this characterization.  (ECF No. 57 at 22.)

The case law suggests that "having" is a limiting term.  *See Nat'l Credit Union Admin. V. First Nat. Bank*, 522 U.S. 479, 502 (1998) (noting that the phrase "persons having February 29th as a wedding anniversary" "narrow[s] the relevant universe in an exceedingly effective manner").  In *Pieczenik v. Dyax Corp.*, 76 F. App'x 293 (Fed. Cir. 2003), the Federal Circuit rejected a patentee's argument that "having" was "open-ended" and equivalent to "comprising" in the patent realm.  *Id*. at *2.  Interpreting a patent claim which stated: "said oligonucleotide population has a coding region having a length from about 4 to about 12 nucleotide triplets", the Federal Circuit held: "Because the claims refer to a coding region that designates multiple nucleotide triplets, *i.e.*, about 4 to about 12, the claims manifest an objective intent to *close their scope* to

17

oligonuceotide populations consisting of members of specified lengths."  *Id*. (emphasis added).

Similarly, here, the Claims at issue use the term "having" in a manner that indicates an objective intent to limit the particle size of the tea leaves.  Therefore, the Court concludes that "having" is a closed-ended term and this will be reflected in the Court's construction of these Claims.

3.     What "Having" modifies

The issue now becomes whether "having" modifies the term "tea composition" or the phrase "from about 2 grams to about 10 grams of tea".  Defendants adopt the former approach and argue that "substantially all of the tea in the sealed body" must be of the referenced particle size.  (ECF No. 48 at 19-21.)  Plaintiff contends that only between 2 grams and 10 grams of the tea leaves must be of a the prescribed particle size.  (ECF No. 57 at 21-22.)

Applying general grammar rules to the Claims' plain language leads to the conclusion that "having" modifies the clause immediately preceding it, *i.e.*, "from about 2 grams to about 10 grams of tea".  The Claim was not written with a comma between "tea" and "having" and does not contain a conjunction (*e.g.*, "and") between "tea" and "having".  Adopting Defendants' proposed construction and requiring that substantially all of the tea composition be within the specified particle size would read into the Claim a limitation that is not supported by the Claim's language.  Thus, looking just at the plain language of the Claim and applying commonly-accepted grammar principles, the Court finds that Plaintiff's proposed construction of the Claims is appropriate.

Defendants argue that the Specification supports their proposed construction because the invention is repeatedly described as favoring a particle size of between certain dimensions.[3]  (ECF No. 48 at 20-21.)  Defendants also point out that the Specification repeatedly notes that too large of a particle size leads to clumping of the tea leaves and/or spices and results in a poor quality tea extract.  (*Id.*)  While the Court acknowledges that the Specification places heavy emphasis on the fact that the particle size of the tea leaves should generally fall within the prescribed range, the Court finds that Defendants' argument ultimately fails because it is not based on the language of the Claim.  "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which patentee regards as his invention."  *Interactive Gift Express, Inc. v. Compuserve, Inc.*,

---

[3]  Defendants also contend that Plaintiff should not be permitted to oppose their proposed construction because it is identical to the construction which Plaintiff advocated for during prosecution of Plaintiff's European Patent (the "'610 Patent").  (ECF No. 48 at 21-23.)  However, it is not clear that the Court should look to evidence from the European proceeding during claim construction.  The Federal Circuit has held that "statements made during prosecution of foreign counterpart [patents] are irrelevant to claim construction."  *Pfizer, Inc. v. Ranbaxy Laboratories, Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006); *see also TI Group Auto. Servs., Inc. v. VDO N.A.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004) ("the varying legal and procedural requirements for obtaining patent protection in foreign countries might render consideration of certain types of representations inappropriate for consideration in a claim construction analysis of a United States counterpart."); *Burns, Morris & Steward Ltd. v. Masonite Intern. Corp.*, 401 F. Supp. 2d 692, 698 (E.D. Tex. 2005) ("[I]n the context of claim construction, differences in international requirements for patent prosecution could make reliance on representations before foreign patent offices inappropriate.").  The cases cited by Defendants in support of this argument do not involve claim construction; rather, they involve the applicability of the doctrine of equivalents.  *See Tanabe Seiyaku Co. v. Inter. Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997); Caterpillar *Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983)*.*  Moreover, to the extent that the Court were to consider the position taken by Plaintiff during the European prosecution, it would not outweigh the plain language of the Claim.

256 F.3d 1323, 1331 (Fed. Cir. 2001) (quotation omitted).  The terms used in the claims

bear a "heavy presumption" that they mean what they say and have the ordinary

meaning that would be attributed to those words by persons skilled in the relevant art.

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  Nothing in

the plain language of the Claim suggests that substantially all of the tea composition

has to be of the prescribed particle size.  That limitation is simply not in the plain

language of the Claim.

Moreover, nothing in the Specification shows an intent to limit the Claim such

that substantially all of the tea composition must be within the range of particle sizes.

The Specification actually anticipates that some of the tea composition may fall outside

of the specified particle size:

- "Preferably, a tea leaf or herb used in a tea composition of the present invention

  has a particle size of greater than about 0.40 mm.  Such a particle size

  preferably has a maximum size of about 0.75 mm, although some loose tea

  leaves can have a particle size of at least 1 cm."  ('672 Patent p. 9 lns. 26-31.)

- "In another embodiment of the present invention, loose leaf teas having a

  particle size of up to 3.5 cm can be used."  ('672 Patent p. 9 lns. 49-51.)

This evidence shows that the Specification does not narrow or limit the plain language

of the Claim.

Accordingly, the Court will adopt a construction that is similar to that proposed by

Plaintiff.  However, with respect to Claims 7 and 8, as discussed above, the Court has

determined that the addition of the term "extract" following "dark/medium strength tea".

The Court concludes that the addition of the term "extract" to these Claims requires a

slight modification of Plaintiff's proposed construction.  The sentence structure of Claims 7 and 8 shows that both the clause "which produce a [dark/medium] strength tea extract" and the clause "having a particle size from about ____ to ____mm" modify and are descriptive of "from about 2 grams to about 10 grams of said tea leaves". Therefore, the Court's construction will clarify the fact that the particle size does not modify a "tea extract" but rather refers back to the "tea leaves" themselves.

Accordingly, the Court concludes that the following construction gives meaning to all of the limitations within the each Claim's plain language and does not import limitations from the Specification into the Claim.  The Court construes Claims 1, 20, and 21 as follows:

> "a tea composition including at least from about 2 grams to about 10 grams of tea that has a particle size of from about 0.40 mm to about 0.75 mm"

The Court construes Claim 8 as follows:

> "The tea extract system of claim 2, wherein said tea composition includes at least from about 2 grams to about 10 grams of said tea leaves which produce a medium strength tea extract and have a particle size of from about 0.40 mm to about 0.60 mm."

For Claim 7, the Court adopts the following construction:

> "The tea extract system of claim 2, wherein said tea composition includes at least from about 2 grams to about 10 grams of said tea leaves which produce a dark strength tea extract and have a particle size of from about 0.40 mm to about 0.75 mm."

## IV.  CONCLUSION

Accordingly, the Court hereby ADOPTS the constructions of the disputed terms and phrases as set forth above.

Dated this 19th day of November, 2012.

BY THE COURT:

William J. Martinez
United States District Judge