**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-0189-WJM-KMT

TEASHOT LLC, a Colorado limited liability company,

    Plaintiff,

v.

GREEN MOUNTAIN COFFEE ROASTERS, INC., a Delaware corporation,
KEURIG, INC., a Delaware corporation, and
STARBUCKS CORPORATION, a Washington corporation,

    Defendants.

---

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

---

Plaintiff Teashot LLC ("Plaintiff" or "Teashot") owns the rights to United States Patent No. 5,895,672 (the "'672" Patent). In this action, Teashot alleges that Defendants Green Mountain Coffee Roasters, Keurig, and Starbucks Corporation (collectively, "Defendants") have infringed on the '672 Patent. (ECF No. 1 ¶¶ 49-53.)

Before the Court are Defendants' Motion for Summary Judgment (ECF No. 76) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 136). For the reasons set forth below, Defendants' Motion is GRANTED and Plaintiff's Motion is DENIED AS MOOT.

**I.  LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

In the 1980s and 90s, specialized forms of coffee, such as espresso, grew in popularity. (ECF No. 48 at 6.) Espresso is produced in special machines that operate at a higher temperature and pressure than a standard coffee maker. (*Id.*) For single serving espresso beverages, coffee was typically placed into "pods" which consisted of "an enclosed water-permeable pod or package which contains a pre-measured amount of ground coffee that is preferably compressed to provide a consistent measure of coffee for production of espresso beverages." ('672 Patent (ECF No. 78-1) at 1.)

Barry Patrick Wesley Cooper is an "International Tea Master with decades of experience in tea." (ECF No. 50 at 6.) In early 1997, he began to develop a "novel invention" whereby one could use an espresso machine to make a cup of tea in a

fraction of the time required to make tea using conventional methods.  (*Id*.)  Mr. Cooper filed a patent application for this invention on January 13, 1998 and, on April 20, 1999, was granted U.S. Patent No. 5,895,672 entitled "Product and Process for Preparing a Tea Extract".  (*Id*.)  In 2011, Mr. Cooper formed Teashot LLC and assigned the '672 Patent to the LLC.  (*Id*. at 7.)

The '672 Patent covers a process for the brewing of tea in a coffee brewing device and, particularly, an espresso machine.  ('672 Patent at 1.)  The purpose of the invention covered by the '672 Patent is to use existing coffee-espresso technology to produce high quality tea-based beverages that are "consistent, fast, easy, [and] cost efficient".  (*Id*. at 2.)  The '672 Patent's Claims[1] cover (1) the tea extraction container (Claims 1-19); (2) the tea composition (Claim 20); and (3) the method for producing a tea extract using a coffee brewing device (Claims 21-26).

After obtaining the '672 Patent, Mr. Cooper agreed to produce tea pods for use in the Melitta One:One coffee brewing device.  (ECF No. 112 ¶ 4.)  Mr. Cooper developed, and has been selling for nearly a decade, four different tea-filled pods for use in the One:One brewer.  (*Id*.)  These pods are made entirely of filter-paper, but are packaged for shipping in a foil packet that is marked with the '672 Patent.  (*Id*.)

Plaintiff filed this action against Defendants Green Mountain Coffee Roasters, Inc., Keurig, Inc., and Starbucks Corporation alleging that Defendants are violating the '672 Patent by manufacturing, selling, or offering "K-Cup" portion packs which contain tea for use in Keurig-brand coffee brewing devices and the like.  (ECF No. 1 at 15-21.)

---

[1] Capitalization of the terms "Claim" or "Specification" means the Court is referring to those portions of the '672 Patent.

The accused K-Cups consist of a plastic cup covered with a foil lid. (ECF No. 76 at 9.) The tea is contained inside the K-Cup in a compartment made of filter-paper on three sides, with the fourth side being the foil lid. (*Id.*) To brew a cup of tea, a user inserts the K-Cup into a Keurig brewer and closes the lid. (*Id.*) When the brewer is closed, a top and bottom needle puncture the K-Cup. (*Id.*) The top needle remains inside the foil lid and injects water into the pack. (*Id.*) The water flows through the tea composition, then through the filter paper, and finally exits the hole in the plastic cup made by the bottom needle. (*Id.*)

After Defendants filed their Answers to Plaintiff's Complaint, the Court held a Scheduling Conference. (ECF No. 39.) The parties agreed on dates for the exchange of infringement and invalidity contentions, and informed the Court that an early *Markman* hearing would be of assistance in resolving the case. (ECF No. 25 at 9.) The Court accepted the parties' agreement and entered the parties' Proposed Scheduling Order as its own. (ECF No. 40.)

In accordance with the Court's Scheduling Order, Plaintiff provided Defendants with its preliminary infringement contentions on May 1, 2012. (ECF No. 51-2.) Therein, Plaintiff alleged that Defendants were infringing on the following Claims: 1-4, 6-8, 12, 14, and 20-23. (*Id.* at 1.) Of these Claims, Claims 1 and 21 are independent; the remaining Claims depend, either directly or indirectly, on these independent Claims.

On June 22, 2012, the parties filed their Joint Statement of Stipulated and Disputed Claim Terms and Phrases for Construction and Proposed Constructions. (ECF No. 44.) The parties stipulated to the definitions of four Claim terms or phrases, and

identified eight terms or phrases that should be construed by the Court. (ECF No. 44-2.) On July 20, 2012, the parties filed briefs arguing in favor of their respective proposed constructions. (ECF Nos. 48 & 50.) On August 21, 2012, the parties filed response briefs on the construction of these eight terms and/or phrases. (ECF Nos. 56 & 57.) The Court held a half-day *Markman* hearing on September 28, 2012. (ECF No. 63.)

On November 19, 2012, the Court issued its Order on Claim Construction ("*Markman* Order"). (ECF No. 67.) Relevant to the issues presented in the instant Motions, the Court construed the phrase "said sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition" which is contained in Claims 1 and 21 to mean "the portions of the sealed body into which fluid flows and out of which fluid flows are water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition". (*Id*. at 11.)

After the Court entered its *Markman* Order, it held a second scheduling conference. (ECF No. 74.) The Court's post-*Markman* Scheduling Order mandated that fact discovery would close on April 19, 2013, expert discovery on June 21, 2013[2], and the dispositive motion deadline was set for July 19, 2013. (ECF No. 75 at 2-3.)

On May 24, 2013, Defendants filed a Motion for Summary Judgment. (ECF No. 76.) Plaintiff filed its Response on June 17, 2013 (ECF No. 107), Defendants filed a Reply on July 5, 2013 (ECF No. 123), and Plaintiff filed a Sur-reply on July 18, 2013 (ECF No. 135).

---

[2] The deadline for expert discovery has since been extended multiple times. (*See* ECF Nos. 99 & 178.)

Plaintiff filed a Motion for Partial Summary Judgment on July 19, 2013. (ECF No. 136.) Defendants filed their opposition on August 19, 2013 (ECF No. 149), Plaintiff filed its Reply on September 13, 2013 (ECF No. 160), and Defendants filed a Sur-reply on September 23, 2013 (ECF No. 172). Both Motions are ripe for review.

### III.  ANALYSIS

Defendants claim that they are entitled to summary judgment on Plaintiff's claim for patent infringement. (ECF No. 76 at 20.) Infringement claims fall into two broad categories: literal infringement and infringement under the doctrine of equivalents. "Literal infringement exists if each of the limitations of the asserted claim(s) . . . [is] found in, the accused device." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995). Alternatively, where a product does not literally infringe, a court may find infringement under the doctrine of equivalents if there is "'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008) (quoting *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).

A determination of infringement is a two-step process. The first step is determining the meaning and scope of the asserted claims, which is a matter of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (*en banc*). The Court undertook this first step when it held a *Markman* hearing on September 28, 2012, and then issued its Claim Construction Order on November 19, 2012. (ECF No. 67.)

The second step of the infringement analysis involves comparing the accused device to the properly construed claims. *Cybor*, 138 F.3d at 1454. This analysis is a question of fact. *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed. Cir. 1997). A device literally infringes if each element of the asserted claim is found in the accused device. *Id*. Alternatively, a device may infringe under the doctrine of equivalents if it contains elements "equivalent to each claimed element of the patented invention." *Warner-Jenkinson*, 520 U.S. at 40.

Defendants move for summary judgment on Plaintiff's claim for literal infringement and under the doctrine of equivalents, and the Court will address each in turn below.

**A.    Literal Infringement**

For a plaintiff to prevail on a claim for literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Summary judgment on infringement is appropriate when "no reasonable jury could find that every limitation recited in a properly construed claim . . . [is] found in the accused device." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1664 (Fed. Cir. 2005).

Plaintiff alleges that Defendants' K-Cups literally infringe on claims 1 and 21, each of which include the following language: "said sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition". ('672 Patent, cols. 18-20.) The Court previously construed this phrase to mean that "the portions of the sealed body into

which fluid flows and out of which fluid flows are water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition". (*Markman* Order at 11.)

Defendants allege that the accused K-Cups do not literally infringe on Claims 1 and 21 of the '672 Patent because the foil lid on the accused K-cups—the portion of the sealed body into which water flows—is water-impermeable. (ECF No. 76 at 12.) Defendants contend that, because the lid is made of foil, which is water-impermeable, there can be no literal infringement. (*Id*.) Defendants point out that Plaintiff's sole owner, who is also the inventor of the '672 Patent, admitted in his deposition that the foil lid of the K-Cup is water-impermeable. (ECF No. 78-10)pp. 191-93.)

Plaintiff does not dispute that, as manufactured, the lid of the K-Cup is a solid piece of foil, which is water-impermeable. (ECF No. 107 at 19-20.) Instead, Plaintiff contends that the foil lid becomes water-permeable when the K-Cup is used because the lid is punctured by a needle during usage. (*Id*.) Plaintiff contends that, once perforated, the foil lid is water-permeable. (*Id*.) Thus, the key dispute between the parties is whether the foil lid of the K-Cup is water-permeable after it has been punctured by the needle of the brewing device.

In support of its argument that the perforated lid is water-permeable, Plaintiff cites to Figure 4 of the '672 Patent, which is a drawing of a "rigid container having multiple tea extraction containers connected to each other at the side of the sealed bodies, from top to bottom, around an axial member". ('672 Patent col. 8 lns. 1-3.) Plaintiff points out that, in its *Markman* Order, the Court noted that the tops and bottoms of each of these rigid metal "pods" was perforated, and the Court held that the tops and

8

bottoms were water-permeable because of this perforation.  (*Markman* Order at 10.) Plaintiff also points to the portion of the '672 Patent which states that "[t]he water-permeable material suitable for construction of the sealed body can be any water-permeable material that is suitable for use with a food product, such as filter paper, permeable plastic, tight weave metal mesh, nylon and linen." ('672 Patent col. 5 lns. 47-51.)

The Court agrees that certain materials made of metal alloys, including aluminum, can be water-permeable.  For example, an aluminum mesh screen could be used in a device that resembles Figure 4 of the '672 Patent.  But the Court sees a fundamental difference between a metal mesh screen and a solid sheet of foil that has been punctured.  The metal mesh screen is designed to allow fluid to flow through it; indeed, the size of the perforation must be carefully calculated to be large enough to allow the fluid to flow, yet small enough to prevent leakage of the tea leaves out of the holes.  On the other hand, the foil lid of the K-Cup is designed to prevent the flow of any substance—including water, but also air and other moisture that could cause spoilage of the tea leaves—into the sealed body.

Defendants contend that the issue here is not what is done to the lid material, but what the material is. (ECF No. 123 at 3.)  Given the verbiage of the '672 Patent, which provides that the sealed body must be "*constructed of* a water-permeable material", the Court finds this argument compelling.  ('672 Patent cols. 18-20 (emphasis added).)  Were the K-Cup constructed with a metal mesh lid, Plaintiff's argument would likely prevail because metal mesh is a water-permeable material, even if metal in and of itself is not water-permeable.  But it is undisputed that the lid of the K-Cup's sealed body

is constructed of a solid sheet of foil, which is plainly water-impermeable.  The fact that water could conceivably flow through the solid piece of foil after it is perforated does not change the fact that the lid is itself constructed in the first instance of a water-*impermeable* material.

Moreover, patents are generally to be construed in a manner that avoids rendering superfluous any portion of a patent claim.  *See Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373-74 (Fed. Cir. 2002).  Nearly any material can be punctured so that water can flow through the punctured surface.  Were the Court to adopt Plaintiff's reasoning and hold that the K-Cup's foil lid is "water-permeable" because water can pass through the hole in the lid after the lid is punctured, the phrase "constructed of a water-permeable material" would be so limitless as to essentially be meaningless.  The Court must avoid this construction.[3]  *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996) (refusing to read a limitation so broadly that it would become "meaninglessly empty").

For all of these reasons, the Court concludes that there is no genuine dispute of fact as to whether the accused device contains all of the limitations expressed in Claims 1 and 21.  The lid of the K-Cup is not constructed of a water-permeable material and,

---

[3] Moreover, as construed by the Court, Claims 1 and 21 require that the portions of the sealed body into which and out of which water flows be constructed of a water-permeable material.  (*Markman* Order at 11.)  The way K-Cups are used, water does not flow through the foil lid, even after the lid is punctured by the needle.  Instead, it is undisputed that the needle punctures the foil lid, then remains inside the sealed body and injects water directly into the tea composition.  (ECF No. 76 at 13-14.)  Thus, water does not flow directly through the foil lid of the K-Cup; it flows within the needle after it has punctured the lid, so that the injection point is inside of the sealed body.  If the needle punctured the foil lid and then withdrew so that water flowed through the hole into the sealed body to contact the tea composition, Plaintiff's infringement argument would be stronger.  But the record without any question shows that the device does not function that way.

even if it were, water flows through a needle inserted into the K-Cup, and not through the material of the lid itself. Thus, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim for literal infringement with regard to Claims 1 and 21.

B.   **Doctrine of Equivalents**

Plaintiff argues that, if the Court finds that the K-Cups do not literally infringe on the '672 Patent, the Court must consider whether there is infringement under the doctrine of equivalents. (ECF No. 107 at 24.) A device that does not literally infringe may nonetheless infringe under the doctrine of equivalents if "every limitation of the asserted claim, or its 'equivalent,' is found in the accused subject matter, where an 'equivalent' differs from the claimed limitation only insubstantially." *Ethicon Endo-Surgery, Inc.*, 149 F.3d at 1315. The Supreme Court has clearly articulated the motivation behind the doctrine of equivalents:

> [C]ourts have . . . recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing . . . . Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism, and would be subordinating substance to form. . . The doctrine of equivalents evolved in response to this experience.

*Graver Tank*, 339 U.S. at 607.

Defendants contend that Plaintiff has waived any claim under the doctrine of equivalents. (ECF No. 76 at 15.) Defendants point out that Plaintiff did not raise the doctrine of equivalents in its pleadings, it did not include the doctrine of equivalents in

11

its initial infringement contentions, it did not supplement its infringement contentions to include the doctrine of equivalents until the close of fact discovery, and it first outlined its theory of infringement under the doctrine of equivalents two weeks after fact discovery had closed. (*Id.* at 16.) Defendants contend that they were denied the ability to conduct discovery into Plaintiff's infringement theory based on the doctrine of equivalents, and that this was significantly prejudicial. (*Id.* at 17.)

In response, Plaintiff admits that it did not specifically allege any doctrine of equivalents claim in its Complaint, and that it did not disclose this theory of infringement until the close of fact discovery. (ECF No. 107 at 25-26.) However, Plaintiff alleges that this did not constitute waiver because nothing in this Court's Scheduling Order or Local Rules required it to disclose this theory any earlier in the litigation. (*Id.* at 26.)

The Court agrees with Plaintiff that its failure to specifically allege a claim under the doctrine of equivalents in its Complaint did not, in and of itself, constitute waiver of a claim brought under the doctrine. The Federal Circuit has never explicitly held that a party is required to plead doctrine of equivalents, and the district courts are split as to whether such express pleading is required. *Compare U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 618-620 (N.D. Ill.2007) ("A plaintiff is not required to expressly refer to the doctrine of equivalents in a complaint, alleging infringement and citing to [the statute prohibiting infringement] is sufficient.") *with Automated Transaction Corp. v. Bill Me Later, Inc.*, 2010 WL 1882264, *2 (S.D. Fla. May 11, 2010) (finding that the Federal Circuit has implied a requirement that a doctrine of equivalents claim be pled explicitly and allowing plaintiff to amend its complaint to do so). Given this lack of

clear and binding guidance, the Court is unwilling to find waiver based *solely* on the fact that Plaintiff failed to include the doctrine of equivalents in its pleadings.

Instead, the Court finds that Plaintiff waived its right to raise the doctrine of equivalents by failing to timely disclose it as an infringement theory. Discovery in patent cases—like all civil cases—is governed by the Federal Rules of Civil Procedure. Rule 26 mandates that certain items be disclosed automatically, and that any nonprivileged matter that is relevant to a claim or defense may be obtained through discovery. Fed. R. Civ. P. 26(a), (b). Rule 26(e) imposes an obligation on parties to conduct a reasonable inquiry into the factual basis of their discovery responses before submitting them to the opposing party, and also requires that a party "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1).

In this case, the Court's pre-claim construction Scheduling Order directed Plaintiff to serve "its infringement contentions, claim charts, and associated documents on Defendants" no later than May 1, 2012.[4] (ECF No. 40 at 9.) Defendants were then required to serve their "invalidity contentions, claim charts, and associated documents

---

[4] Plaintiff argues that the Court cannot find waiver in this case because it has no patent local rules governing infringement contentions, including when and how they can be supplemented. (ECF No. 107 at 26-27.) However, there are many cases in which courts, including the Federal Circuit, have found that a party waived an infringement theory by not asserting it in a timely manner. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272 (Fed. Cir. 2012) (affirming district court's exclusion of invalidity theory based on Rules 26(e) and 37(c)); *Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter*, 2011 WL 5554312, at *5-6 (C.D. Cal. Nov. 14, 2011) (in a case not governed by patent local rules, the court refused to permit plaintiff to amend its response to defendant's interrogatory regarding theories of infringement after the close of discovery).

on Plaintiff" by June 5, 2012. (*Id.*) This schedule was proposed by the parties, who represented that they believed this schedule would "help[] ensure the efficient and effective administration of a case." (ECF No. 24 at 2.)

A common practice in patent law is for a defendant to serve infringement contention interrogatories on the plaintiff, and for the plaintiff to serve invalidity contention interrogatories on the defendant. *See Woods*, 602 F.3d at 1282 (discussing the use of contention interrogatories in patent practice). The exchange of these interrogatories early in the case helps streamline litigation, and "serve[s] an important purpose in enabling a party to discovery facts related to its opponent's contentions." *Id*. The Court's Order requiring the parties to exchange infringement and invalidity contentions effectively took the place of these contention interrogatories. Thus, the parties' infringement and invalidity contentions subject to these provisions of the Scheduling Order operated as the legal and functional equivalent of responses to interrogatories, and were therefore subject to Rule 26(e)'s requirements.

The Federal Circuit has noted that, in jurisdictions that do not have local patent rules, "district courts have discretion to exclude evidence when a party acts in bad faith or prejudices its adversary by deliberately delaying, or wholly failing, to respond to contention interrogatories." *Woods*, 602 F.3d at 1282 (citing *Zenith Elecs. Corp. v. WH-TV Broad., Corp.*, 395 F.3d 416, 420 (7th Cir. 2005)). Rule 26(e) "prohibits parties who are aware of their deficient response from 'hold[ing] back material items and disclos[ing] them at the last moment.'" *Id.* (quoting 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2011)). Instead, "Rule 26(e)

requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." *Id*. at 1280.

It is undisputed that Plaintiff did not include the doctrine of equivalents in its original infringement contentions, served on May 1, 2012, and again failed to include this theory in its March 7, 2013 supplement. (ECF Nos. 78-3 & 78-4.) Rather, Plaintiff waited until the close of fact discovery on April 19, 2013 to finally include the doctrine of equivalents in its supplemented infringement contentions. (ECF No. 78-5.) However, even this disclosure failed to include any details regarding Plaintiff's doctrine of equivalents theory. (*Id*.) The first detailed explanation of such theory was not served on Defendants until April 30, 2013, as part of the expert report of Dr. Maynes.[5] (ECF No. ¶ 7.)

Significant to the Court's analysis of this issue is the fact that Plaintiff has provided no explanation for why it failed to disclose this theory earlier. (*See* ECF No. 107 at 26.) Instead, Plaintiff contends that it did not waive the right to raise the doctrine of equivalents because nothing in the Court's Scheduling Order specified what was required to be included in the infringement contentions, and Defendants never complained that Plaintiff's infringement contentions were not specific enough. (*Id*.) Plaintiff also points out that Defendants never propounded written discovery requesting Plaintiff's position regarding infringement under the doctrine of equivalents. (ECF No. 108 ¶ 19.)

---

[5] Plaintiff contends that its letter to Defendants' counsel on April 22, 2013 was an earlier expression of its doctrine of equivalents theory. (ECF No. 108 ¶ 17.) While the April 22, 2013 letter mentioned the doctrine of equivalents, it was only a very general reference.

15

The Court finds these arguments insufficient to explain Plaintiff's late disclosure. Plaintiff's attorneys are experienced patent litigators, who are reasonably expected to understand that infringement contentions—whether responsive to a contention interrogatory, required by local patent rules, or included in a scheduling order—should specify what infringement theories the party is pursuing. Moreover, Defendants were not required to complain about Plaintiff's infringement contentions or serve separate written discovery related to Plaintiff's infringement theories. A party has the right to assume that opposing counsel is acting with diligence, and in compliance with the Federal Rules of Civil Procedure, during discovery. Because Plaintiff was already ordered by the Court to provide its infringement contentions, and required by Rule 26(e) to timely supplement the same, Defendants were justified in believing that Plaintiff's disclosures contained all of the infringement theories it was pursuing in the case.[6]

Having considered all of the above, the Court finds that Plaintiff's late disclosure of its intent to pursue the doctrine of equivalents as an infringement theory violated Rule 26(e). Therefore, the question becomes whether such late disclosure constitutes waiver of Plaintiff's ability to raise the doctrine of equivalents. Rule 37(c)(1) governs the use of late disclosed evidence and states: "If a party fails to [supplement an discovery disclosure] as required by Rule [26(e)], the party is not allowed to use that information .

---

[6] Plaintiff also argues that Defendants cannot object to its supplemental infringement contentions filed at the close of discovery because Defendants served their own supplemental invalidity contentions at the same time. (ECF No. 107 at 26.) However, had Plaintiff objected to Defendants' late supplementation, the Court would have applied the same analysis, and likely precluded Defendants from using any of the late-disclosed materials. Thus, the Court disagrees that Defendants' actions preclude a finding that Plaintiff waived the doctrine of equivalents. Both parties had an obligation to supplement their contentions in a timely manner, and the failure to do so by either Plaintiff or Defendants is sanctionable.

. . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Although Rule 37(c) specifically references a party's ability to use evidence at trial, it has been applied to bar a party from raising certain theories of infringement in patent cases, because each new theory necessarily requires new evidence or witnesses. *See Tritek Techs., Inc. v. United States*, 63 Fed. Cl. 740, 749 (Fed. Cl. 2005); *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1374 (Fed. Cir. 2002) (noting that the result is the same regardless of whether the district court held that a theory of infringement was waived or excluded an expert report on that theory because, without the expert report, plaintiff had no evidence supporting such theory). A district court has wide discretion to limit a party's use of evidence. *See Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed. Cir. 1986) ("The boundaries of the district court's discretion are defined by unfair, prejudicial harm to a party deprived of an adequate opportunity to present its case.").

Pursuant to Rule 37(c), Plaintiff is not permitted to raise the doctrine of equivalents unless it can show that the late disclosure was substantially justified or harmless. Plaintiff makes no attempt to explain the late disclosure or otherwise show how it was justified. In an attempt to show that the late disclosure was harmless, Plaintiff contends that Defendants have failed to show that they suffered any prejudice. (ECF No. 107 at 27.) Plaintiff points out that, on May 21, 2013, Defendants served Dr. Slocum's rebuttal expert report, which addresses Dr. Maynes's opinions on doctrine of equivalents. (ECF No. 108 ¶ 23.)

The Court disagrees that Plaintiff's Rule 26(e) violation was harmless. Defendants had no way of knowing whether the Court would find that Plaintiff had

waived the right to assert the doctrine of equivalents, and were therefore properly defending against that theory in the event the Court ruled against them. The fact that Defendants were able to obtain an expert to provide a rebuttal opinion on the doctrine of equivalents does not mean that they suffered no prejudice from the late disclosure. Indeed, as Defendants argue, because Plaintiff did not disclose its intent to pursue the doctrine of equivalents until the close of discovery, Defendants were denied the ability to conduct any discovery on this alternative theory of infringement: they were precluded from propounding any written discovery or to question Plaintiff's witnesses on the issue at their respective depositions.

The Court finds that Plaintiff has failed to show that its late disclosure of the doctrine of equivalents theory was harmless, and it further finds that Defendants were manifestly prejudiced by the tactical approach Plaintiff took with respect to its pursuit of a claim under the subject doctrine. *See Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721, 735 (E.D. Va. 2001) ("[T]he late interjection of the doctrine of equivalents infringement analysis is not substantially justified within the meaning of Rule 37(c) and the late presentation of that theory on the eve of trial is anything but harmless."); *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005) ("To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense.").

In sum, the Court finds that Plaintiff's late disclosure of its intent to pursue the doctrine of equivalents as an infringement theory violated Rule 26(e), and that the appropriate sanction pursuant to Rule 37(c) is to find that Plaintiff has waived the ability to pursue this theory. Accordingly, the Court finds that summary judgment in favor of

Defendants is appropriate on Plaintiff's patent infringement claim under the doctrine of equivalents.

### C. Plaintiff's Remaining Infringement Claims

The only independent infringement claims brought by Plaintiff are discussed above. Because the Court has found no infringement on those claims, Plaintiff cannot prevail on any of the remaining claims. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) (if an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon). Therefore, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's dependent claims.

### D. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has separately filed a Motion for Partial Summary Judgment seeking judgment in its favor on four issues: (1) that if the use of K-Cups in a Keurig Brewer infringes on the '672 Patent, then Defendants induce and contribute to such infringement; (2) that Plaintiff and its predecessors-in-interest have satisfied the requirements of 35 U.S.C. § 287 since at least January 1, 2009; (3) that the asserted claims of the '672 Patent are not invalid; and (4) that Claims 22 and 23 of the '672 Patent are not invalid. (ECF No. 136 at 1-2.)

The first two issues relate to sub-parts of Plaintiff's affirmative claims for patent infringement. As set forth above, the Court finds that Plaintiff has failed to show any genuine dispute of fact as to whether the disputed K-Cups infringe on the '672 Patent. As such, summary judgment in favor of Defendants is appropriate, and the Court need

not address Plaintiff's arguments for summary judgment in its favor.

The third and fourth issues in Plaintiff's Motion are directed towards Defendants' affirmative defense that the '672 Patent is invalid. Because the Court has found that Plaintiff has failed to show that the K-Cups infringe of the '672 Patent, Plaintiff's claims have been defeated and Defendants' affirmative defenses are moot.[7] *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) (determining that the affirmative defense of invalidity was moot in light of the finding of non-infringement).

Accordingly, Plaintiff's Motion for Partial Summary Judgment is denied as moot.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 76) is GRANTED;

2. Plaintiff's Motion for Partial Summary Judgment (ECF No. 136) is DENIED; and

3. The Clerk shall enter judgment in favor of Defendants on all claims. Defendants shall have their costs.

Dated this 6th day of February, 2014.

BY THE COURT:

William J. Martinez
United States District Judge

---

[7] Notably, Defendants have raised invalidity only as an affirmative defense in this case. (*See* ECF No. 19 at 9.) Had Defendants asserted a counterclaim alleging that the '672 Patent was invalid, a different standard would apply. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1370-71 (Fed. Cir. 2003) ("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion.").